United States District Court
Southern District of Texas
**ENTERED**
June 25, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | § | |
|---|---|---|
| | § | |
| IN RE SIM 2 TANK BARGE, | § | |
| OFFICIAL NO. 1089249 | § | CIVIL ACTION NO. 3:24-cv-00036 |
| | § | |
| | § | |

## MEMORANDUM AND RECOMMENDATION

This limitation of liability action was filed by Petitioner Savage Inland Marine, LLC ("SIM"), as the owner/operator of the SIM 2, in connection with personal injuries sustained by Claimant Anacleto Acosta. Pending before me is SIM's Motion for Exoneration and Summary Judgment. *See* Dkt. 48. Having reviewed the briefing, the record, and the applicable law, I recommend the motion be granted.

### BACKGROUND

Gulf Sulfur Services Ltd., LLLP ("GSS"), the time charterer of the SIM 2, owns and operates a liquid and solid sulfur handling facility and marine terminal (the "Terminal") in Galveston. As part of its business of supplying liquid sulfur to customers, GSS chartered the SIM 2. The SIM 2 is an unmanned barge that transports liquid sulfur. SIM, as the owner of the SIM 2, retained responsibility for the operation and maintenance of the vessel.

The SIM 2 has heating coils to keep the sulfur it transports in a liquid state. In early 2022, SIM discovered a leak in the heating coils, which caused the sulfur to solidify. SIM's port engineer, Kristen Dumaine, hired Delesco, Inc. to remove the solidified sulfur and clean the heating coils so that the leak could be identified. Acosta was a member of the four-man Delesco crew that worked to clear the hardened sulfur from the SIM 2. Acosta has worked for Delesco or its predecessor since 1995 and has cleaned sulfur barges more than a dozen times during his employment.

The Delesco crew's cleaning work on the SIM 2 began on January 24, 2022. The crew used an air-chipping hammer to chip away at the hardened sulfur. The work progressed without incident for the first two days. On January 26, 2022, Acosta was injured when a large piece of sulfur broke free and fell on him. Delesco determined that the sulfur fell on Acosta due to the vibration from the chipping guns being used near the base of the tank wall.

On December 5, 2023, Acosta filed suit in the 405th Judicial District Court of Galveston County, Texas against GSS, SIM, Savage Services Corporation, and Savage Enterprises Holdings, LLC. On January 11, 2024, GSS removed the state court case to federal district court. *See* Notice of Removal, *Acosta v. Officer Gulf Sulphur Servs. Ltd., LLLP*, No. 3:24-cv-00016 (S.D. Tex. Jan. 11, 2024). On February 1, 2024, SIM instituted this limitation action, which has stayed the *Acosta* case. Acosta has appeared as a claimant in this action and asserted claims against SIM. GSS has also appeared as a claimant to assert contribution and indemnity claims against SIM. Texas Mutual, Delesco's insurance carrier, has asserted a lien for the Longshore and Harbor Workers' Compensation Act ("LHWCA") benefits it paid on Acosta's behalf. SIM has moved for exoneration and summary judgment in its favor.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of informing the court of the basis for their motion and identifying those portions of the evidence which they believe demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-movant then bears the burden to "go beyond the pleadings and designate specific facts that prove that a genuine issue of material fact exists." *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023). "A fact issue is material if its

resolution could affect the outcome of the action." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015) (quotation omitted).

Evidence should be construed "in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013) (quotation omitted). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case on which it will bear the burden of proof at trial, summary judgment must be granted. *See Celotex*, 477 U.S. at 322–23.

## ANALYSIS

**A.   LIMITATION OF LIABILITY AND EXONERATION**

Under the Limitation of Liability Act, a shipowner may limit its liability for damages caused by an accident to the value of the vessel at the end of its voyage, plus any pending freight, provided the shipowner had no privity or knowledge of any unseaworthy condition or negligent act that was a proximate cause of the incident. *See SCF Waxler Marine, L.L.C. v. Aris T M/V*, 24 F.4th 458, 472 (5th Cir. 2022); 46 U.S.C. § 30523(a)–(b). "[A] complaint seeking limitation may also demand exoneration." *Odeco Oil & Gas Co., Drilling Div. v. Bonnette*, 74 F.3d 671, 675 n.7 (5th Cir. 1996). A shipowner who is "shown to have been free from fault" will be exonerated. *Tittle v. Aldacosta*, 544 F.2d 752, 755 (5th Cir. 1977).

**B.   THE LHWCA**

Originally enacted in 1927, the LHWCA establishes a "comprehensive federal workers' compensation program that provides longshoremen and their families with medical, disability, and survivor benefits for work-related injuries and death." *Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 96 (1994). It is undisputed that the LHWCA provides Acosta's exclusive remedy. *See* 33 U.S.C.

§ 905(b). A plaintiff claiming relief against a vessel under the LHWCA bears the burden of establishing the elements of duty, breach, causation, and damages. *See Ates v. B&D Contracting, Inc.*, 487 F. App'x 201, 203 (5th Cir. 2012) ("[G]eneral principles of negligence guide our analysis in a maritime tort case."); *Hayes v. United States*, 899 F.2d 438, 443 (5th Cir. 1990) ("To prevail upon a claim of negligence, plaintiffs must prove the essential elements of negligence: a duty of reasonable care, breach of that duty, and damages resulting from the breach."). The LHWCA does not define the duties a vessel owes to a maritime worker like Acosta. The United States Supreme Court, however, has delineated the scope of a vessel's duty to marine workers. *See Scindia Steam Nav. Co. v. De Los Santos*, 451 U.S. 156, 166–73 (1981).

The *Scindia* duties include: (1) the turnover duty, which requires the vessel owner to warn of hidden defects of which he should have known before turning over the ship; (2) the duty to prevent injuries caused by hazards that are under the vessel's control; and (3) the duty to intervene when the vessel owner "has *actual* knowledge both of the hazard and that the stevedore, in the exercise of obviously improvident judgment, means to work on in the face of it and therefore cannot be relied on to remedy it." *Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1245 (5th Cir. 1997) (quotation omitted). Only the first two duties are at issue here.[1]

---

[1] SIM moved for summary judgment on the duty to intervene, arguing that "the evidence is undisputed that SIM did not have **actual knowledge** of any dangerous condition within the sulphur barge tank" because "only Delesco employees were working in the tank," and that "there was no opportunity to intervene even if a hazard was known." Dkt. 48 at 28–29. Acosta "fails to properly address [this] assertion of fact" in his response. Fed. R. Civ. P. 56(e). In fact, outside of acknowledging that "the duty to intervene" is the third of the *Scindia* duties, Acosta fails to address whether SIM had a duty to intervene at all. Dkt. 50 at 12. Thus, I consider it "undisputed for purposes of [SIM's summary judgment] motion" that SIM had no knowledge of any hazard or that Acosta could not be relied upon to remedy any hazard. Fed. R. Civ. P. 56(e)(2). Acosta has waived any argument to the contrary. *See Ibanez v. Tex. A&M Univ. Kingsville*, 118 F.4th 677, 682 (5th Cir. 2024) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived." (quotation omitted)).

4

## C. SIM Did Not Breach Its Turnover Duty

A vessel owner breaches its turnover duty if it "*fails to warn* on turning over the ship *of hidden defects* of which [it] should have known." *Id.* (quotation omitted). "If the condition existed from the outset, the shipowner is charged with actual knowledge of the dangerous condition and has a duty to warn the stevedore and the longshoremen *if the defect is hidden*." *Hernandez v. M/V Rajaan*, 841 F.2d 582, 586 (5th Cir. 1988) (emphasis added), *opinion corrected on denial of reh'g*, 848 F.2d 498 (5th Cir. 1988). The duty to warn does not extend to "dangers which are either: (1) open and obvious or (2) dangers a reasonably competent stevedore should anticipate encountering." *Kirksey v. Tonghai Mar.*, 535 F.3d 388, 392 (5th Cir. 2008). Nor does the duty extend to workers who were hired to remedy the condition that caused the worker's injury.[2]

When it comes to the turnover duty, Acosta must confront a litany of cases holding that vessel owners are "under no duty to protect [claimants] from risks that were inherent in the carrying out of the contract." *West v. United States*, 361 U.S. 118, 123 (1959). Acosta attempts to distinguish these cases, arguing that hardened sulfur is "an *operational* issue" as opposed to "a *safety* issue." Dkt. 50 at 22. This is a distinction without a difference. It is undisputed that Delesco was hired to remove the hardened sulfur, and that Delesco's method for removing the

---

[2] *See West v. United States*, 361 U.S. 118, 123 (1959) ("It appears manifestly unfair to apply the requirement of a safe place to work to the shipowner when he has no control over the ship or the repairs, and the work of repair in effect creates the danger which makes the place unsafe. The respondent . . . was under no duty to protect petitioner from risks that were inherent in the carrying out of the contract."); *Stass v. Am. Com. Lines, Inc.*, 720 F.2d 879, 882 (5th Cir. 1983) ("The courts have long recognized that the vessel owner has no duty to deliver his ship to the shipyard in a hazard-free condition, when the requested repairs would remedy the hazards which cause the injury."); *Hill v. Texaco, Inc.*, 674 F.2d 447, 451 (5th Cir. 1982) ("It is true that the walls were rusty, but this condition is no occasion for holding that Texaco was negligent. Evans was hired as a specialist precisely to test the effect of rust on the thickness of the walls of the tank."); *Meserole v. M/V Fina Belgique*, 736 F.2d 147, 148–49 (5th Cir. 1984) ("These repair cases recognize that the vessel owner cannot protect the stevedore or its longshoremen from dangers inherent in the carrying out of the contract." (quotation omitted)).

sulfur—hammering the bottom of the tank while hardened sulfur remained overhead—caused a piece of sulfur to fall on Acosta's head. That risk was inherent in Delesco's work. Acosta offers me no authority on which I could rely to find that SIM had a turnover duty under the facts of this case. A mountain of binding, precedential authority to the contrary requires me to find that SIM had no turnover duty to Acosta because Acosta was hired to remedy the very condition that caused his injury, and the risk of remedying that condition was inherent in Delesco's work.

### D.   SIM DID NOT EXERCISE ACTIVE CONTROL OVER ACOSTA'S WORK

The "active control" duty requires Savage to "exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation." *Scindia*, 451 U.S. at 167. This duty "is not relieved when the hazard is open and obvious." *Pimental v. LTD Canadian Pac. Bul*, 965 F.2d 13, 16 (5th Cir. 1992). But the duty is relieved where "a vessel has relinquished control over an area to the stevedore, then it is the primary responsibility of the stevedore to remedy a hazard in that area." *Id.* "The daily presence of the vessel's agents to apprise the progress of work or to ensure some degree of orderliness is not 'active control.' The key issue is whether the work area in question has been 'turned over' to the contractor." *Romero v. Cajun Stabilizing Boats Inc.*, 307 F. App'x 849, 851 (5th Cir. 2009) (quoting *Fontenot v. United States*, 89 F.3d 205, 208 (5th Cir. 1996)) (cleaned up).

Acosta argues that SIM "exercised active control over the repair work being performed by Delesco, Acosta's employer," because Dumaine, the port engineer, "testified that her job involved overseeing and supervising maintenance repairs, things like that, when a vessel is in port," which "comports with [SIM's] contractual obligations to ensure all repairs and maintenance are completed." Dkt. 50 at 13 (quotation omitted).[3] Notwithstanding all the actions Dumaine could have taken

---

[3] Acosta makes much of the fact that Dumaine "repeatedly testified that she actively controlled the worksite and safety procedures." *Id.* But "active control" is "an issue of law."

as part of her sweeping job responsibilities, Acosta cannot point to a single affirmative act by Dumaine that indicates "active control by the vessel over the *actual methods and operative details of [Acosta]'s work*." *Clay v. Daiichi Shipping*, 74 F. Supp. 2d 665, 673 (E.D. La. 1999) (emphasis added). "[O]verarching authority is not the equivalent of 'active control' for purposes of the owner's duties under *Scindia*." *Fontenot v. McCall's Boat Rentals, Inc.*, 227 F. App'x 397, 403 (5th Cir. 2007).

Nor does the fact that SIM "changed the job[] steps for sulfur-removal after the incident" indicate that SIM exercised active control at the time of the January 26, 2022 incident. Dkt. 50 at 14. What SIM, as the vessel owner, could have done is not relevant. *See Fontenot*, 227 F. App'x at 404 (holding that "ultimate control" does not equate to "active or operational control" over the work area); *Davis v. Portline Transportes Mar. Internacional*, 16 F.3d 532, 541 (3d Cir. 1994) ("[T]he vessel's mere reservation of the right to intervene to protect the ship's and its crew's interests, or to eject the stevedore at any time, does not amount to the substantial control necessary to trigger the vessel's active operations duty as long as the vessel does not exercise those reserved rights."). It is undisputed that Dumaine was rarely in the tank while the Delesco crew was working, was not in the tank at the time of the incident and, most importantly, never instructed the crew on how to remove the hardened sulfur from the tank. That is not active control. *See Santee v. Oceaneering Int'l, Inc.*, 656 F. Supp. 3d 690, 700 (S.D. Tex. 2023) (finding that summary judgment was proper because the vessel owner "did not have active control over either the ROV equipment or the Lars deck w[here] the work and alleged injury occurred"), *aff'd*, 95 F.4th 917 (5th Cir. 2024), *reh'g granted*,

---

*Fontenot*, 89 F.3d at 207–08. Dumaine's one-word agreement that she exercised active control—no matter how many times she gave it—does not result in a finding that SIM exercised active control if the facts do not support it. *See Oliver*, 276 F.3d at 744 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.").

*opinion withdrawn*, No. 23-20095, 2024 WL 3755955 (5th Cir. May 21, 2024) and *on reh'g*, 110 F.4th 800 (5th Cir. 2024).

\* \* \*

Because Acosta has failed to create a fact issue as to whether SIM breached any of the *Scindia* duties, SIM is entitled to summary judgment in its favor. Additionally, absent a fact issue as to SIM's breach of any duty, Acosta's punitive damages claim based on gross negligence necessarily fails.

## CONCLUSION

For the reasons discussed above, I recommend that SIM's motion for summary judgment (Dkt. 48) be granted.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 25th day of June 2025.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE